UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH SEBESTA, individually and as parent and next friend to ELIZABETH MARIE SEBESTA, a minor,<br><br>                  Plaintiff,<br><br>      vs.<br><br>ANDREA DAVIS, UNIVERSITY OF ILLINOIS HOSPITAL f/k/a UNIVERSITY OF ILLINOIS MEDICAL CENTER, ELYSIA CHILDS, GLORIA BEAN, and RICHARD H. CALICA,<br><br>                  Defendants. | 12 C 7834<br><br>Judge Feinerman |

**MEMORANDUM OPINION AND ORDER**

Elizabeth Sebesta filed this suit against Andrea Davis, University of Illinois Hospital, f/k/a University of Illinois Medical Center ("UIMC"), Elysia Childs, Gloria Bean, and Richard Calica, asserting claims under 42 U.S.C. § 1983 and Illinois law. Doc. 1. The docket does not reflect that UIMC has been served, and it has not appeared. Sebesta voluntarily dismissed her claims against Calica. Doc. 24. Davis has moved to dismiss the claims against her under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of jurisdiction and for failure to state a claim. Doc. 26. Childs and Bean have moved to dismiss the claims against them under Rule 12(b)(6). Doc. 16. The motions are granted in part and denied in part, and Sebesta will be allowed to replead the dismissed claim.

**Background**

In considering the motions to dismiss, the court assumes the truth of the complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the complaint, documents

1

that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Sebesta's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are set forth as favorably to Sebesta as those materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

On September 26, 2010, Sebesta entered UIMC and the following morning delivered a baby girl, her first child. Doc. 1 at ¶ 8. On September 28, Davis, a licensed social worker employed by UIMC, reported Sebesta to the Illinois Department of Children and Family Services ("DCFS") "for risk of harm" based "primarily" on Sebesta's "psychiatric hospitalization" three weeks earlier and "the fact that Sebesta was not 'receptive' to the social worker's suggestions regarding 'resources or further treatment.'" *Id.* at ¶ 9. The next day, Davis informed Childs, a DCFS caseworker, that Sebesta "seemed defensive when she tried to talk with her about her recent psychiatric hospitalization" and "was against counseling services." *Id.* at ¶ 10. Davis gave Sebesta's mental health and medical information to Childs without obtaining Sebesta's consent or authorization. *Ibid*. As a result of Davis's actions, Sebesta and her daughter were not permitted to leave the hospital until October 1, when DCFS "cleared" them for discharge. *Id.* at ¶ 12.

On November 25, 2010, Childs and Bean, also a DCFS employee, "indicated" Sebesta for "Substantial Risk of Physical Injury/Environment Injurious to Health and Welfare by Neglect" to her child. *Id*. at ¶ 13; *see* 325 ILCS 5/7.14. Childs and Bean did so even though Sebesta's healthcare providers opined that she and the baby were "doing fine" and that she "was very appropriate with her daughter and asked appropriate questions in terms of caring for her child." Doc. 1 at ¶ 13. The only evidence supporting the indicated finding was a "hotline report

2

… alleging possible mental health issues by Ms. Sebesta" on the ground that she had "received inpatient mental health services once during [her] pregnancy" and did "not wish to engage in counseling services." *Ibid.*

On April 15, 2011, DCFS filed a Notice of Decision to voluntarily "unfound" the indicated finding, and an administrative law judge dismissed the matter. *Id.* at ¶ 14. Between October 2010 and April 2011, Sebesta and her daughter "were subjected to home visits and other interference by DCFS," and Childs told Sebesta that "if she did not agree to cooperate with intact family services, Sebesta would lose custody of her child." *Id.* at ¶ 15.

## Discussion

**I.     Count I: § 1983 Substantive Due Process Claims**

Count I of the complaint alleges that the above-referenced actions by Davis, Childs, and Bean violated her substantive due process rights. Doc. 1 at ¶¶ 16-17, 20-21. Although it mentions the Fourth Amendment at one point, *id.* at ¶ 2, the complaint elsewhere makes clear that the § 1983 claim is for violation of Sebesta's substantive due process rights, *id.* at ¶ 1 ("Sebesta seeks damages from the unlawful interference by each of the Defendants with her substantive due process rights"); *id.* at ¶ 17 ("The Defendants' respective deprivations of Plaintiff's rights were arbitrary and capricious and shock-the-conscience."). Sebesta's brief confirms the point by arguing only that she has a viable substantive due process claim without mentioning the Fourth Amendment. Doc. 30 at 4-12.

**A.     Davis's Invocation of State Law Sovereign Immunity**

Davis argues that the substantive due process claims against her should be dismissed on sovereign immunity grounds, reasoning that because her conduct was mandated by Illinois law, § 8(b) of the Illinois Court of Claims Act, 705 ILCS 505/8(d), deprives all courts other than the

Illinois Court of Claims from hearing those claims. Doc. 26 at 2-3. Davis is wrong. Although § 8(d) applies to state law claims, even those filed in federal court, *see Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009); *Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002); *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001); *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 777-78 (7th Cir. 1991), it does not apply to federal claims filed in federal court. *See Owen v. City of Independence*, 445 U.S. 622, 647 n.30 (1980) ("Municipal defenses—including an assertion of sovereign immunity—to a federal right of action are, of course, controlled by federal law."); *Hampton v. City of Chicago*, 484 F.3d 602, 607 (7th Cir. 1973) ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 … cannot be immunized by state law."); *Stoltey v. Clark*, 2006 WL 581027, at *4 (C.D. Ill. Mar. 7, 2006) ("State immunity rules apply to Plaintiff's claims to the extent her claims arise under state law rather than federal law."); *Jumes v. City of Chicago*, 1995 WL 613137, at *3 (N.D. Ill. Oct. 17, 1995) ("section 1983 claims cannot be barred by the Tort Immunity Act because under the supremacy clause of the United States Constitution, a state immunity defense cannot control a federal statute.").

Davis also argues that she is immune under the Abused and Neglected Child Reporting Act ("ANCRA"), 325 ILCS 5/9, which immunizes "any person … participating in good faith in the making of a report … or in making a disclosure of information concerning reports of child abuse and neglect … from any liability … that otherwise might result by reasons of such actions." This argument fails as well. Again, although Davis is covered by ANCRA, s*ee* 325 ILCS 5/4, Illinois law can immunize state officials sued in federal court only for state law claims, not for federal claims. *See Hampton*, 484 F.3d at 607; *Stoltey*, 2006 WL 581027, at *4; *Jumes*, 1995 WL 613137, at *3.

### B. Sebesta's Substantive Due Process Theories

#### 1. Familial Relations

Sebesta claims that Davis, Childs, and Bean interfered with her right to familial relations by reporting her to DCFS, "indicating" for a substantial risk of abuse, and threatening her with the removal of her child. Substantive due process protects individuals' interest in the "care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000) (plurality opinion). Government officials can violate substantive due process when they unjustifiably separate parents from their children. *See Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1019 (7th Cir. 2000). This principle also extends to less severe interferences with the parent-child relationship, such as conducting a custodial interview of a child regarding possible physical abuse at school without first notifying the parents or obtaining their consent. *See Doe v. Heck*, 327 F.3d 492, 518-26 (7th Cir. 2003).

Defendants argue that the "shocks the conscience" standard from *County of Sacramento v. Lewis*, 523 U.S. 833, 846-87 (1998), applies to Sebesta's familial relations claims. Doc. 18 at 6-7; Doc. 26 at 6. That is wrong. The Seventh Circuit has held that a less stringent test applies to such claims; the test requires a "balance … between the fundamental right to the family unit and the state's interest in protecting children from abuse," and requires the court to "evaluate whether, under the circumstances of a particular case, the government officials in question had some definite and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Heck*, 327 F.3d at 524 (internal quotation marks omitted); *see also Xiong v. Wagner*, 700 F.3d 282, 291 (7th Cir. 2012) (same); *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 478-79 (7th Cir. 2011) (same); *Brokaw*, 235 F.3d at 1019 (same).

Under that standard, the complaint states a substantive due process claim against Davis. Davis's report to DCFS was "primarily based upon a psychiatric hospitalization three weeks prior to delivery and the fact that Sebesta was not 'receptive' to the social worker's suggestions regarding 'resources or further treatment.'" Doc. 1 at ¶ 9. Drawing all reasonable inferences in Sebesta's favor, it is plausible that Sebesta's psychiatric problems were minor or of short duration, that no reasonable person in Davis's shoes could have believed that those problems would have affected Sebesta's ability to care for her newborn baby, and that Sebesta was not receptive to the social worker's suggestions for further treatment because she did not need further treatment. Under that set of circumstances, Davis would not have had a reasonable suspicion either that Sebesta had abused her baby or that the baby was in imminent danger of abuse. And if that were the case, Davis would have had no legitimate interest in taking steps that had the effect of interfering with Sebesta's right to take her baby home from the hospital without delay. *See Heck*, 327 F.3d at 521; *Croft v. Westmoreland Cnty. Children and Youth Servs.*, 103 F.3d 1123, 1126 (3d Cir. 1997) ("However, a state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse.") (internal quotation marks omitted).

The complaint also states a familial relations substantive due process claim against Childs and Bean. Sebesta alleges Childs and Bean violated her rights when they "indicated" her for "Substantial Risk of Physical Injury/Environment Injurious to Health and Welfare by Neglect" based only on a "hotline report … alleging possible mental health issues" and Sebesta's rejection of "counseling services." Doc. 1 at ¶ 13. Again, drawing all reasonable inferences in Sebesta's favor, and taking account of Sebesta's allegation that Childs and Bean "indicated" her even

6

though her healthcare providers opined that she and the baby "were doing fine" and that she "was very appropriate with her daughter," *ibid.*, Childs and Bean had no reasonable basis to take the action they did. *See Heck*, 327 F.3d at 520-21.

The complaint also alleges that Childs told Sebesta she "would lose custody of her child" if she did not agree to "intact family services," which "subjected [her] to home visits and other interference by DCFS." Doc. 1 at ¶ 15. A state official cannot use duress—that is, cannot threaten consequences that she has no lawful basis for imposing—to achieve unconstitutional ends. *See Dupuy v. Samuel*, 465 F.3d 757, 762 (7th Cir. 2006). Because the complaint, with all reasonable inferences drawn in Sebesta's favor, alleges that Childs and Bean had no basis to threaten the loss of custody if Sebesta did not agree to intact family services, it plausibly states a duress claim in connection with the home visits. *See Heck*, 327 F.3d at 524-25; *Croft*, 103 F.3d at 1126-27.

Davis, Childs, and Bean also seek dismissal of the substantive due process claim on qualified immunity grounds. "The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). Dismissal on qualified immunity grounds is improper at the pleading stage of this case because the particular facts surrounding the alleged substantive due process violations—the nature of Sebesta's psychiatric problems, whether those problems could have been thought to impact her ability to care for her baby, the duration of the psychiatric problems, whether the problems were mitigated or resolved by the in-patient treatment—are presently unclear, making it impossible to say whether a reasonable person in Davis's, Childs's, or Bean's shoes would have known that their conduct violated the clearly established standard

7

set forth in Seventh Circuit precedents like *Brokaw* and *Heck*. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1090 (7th Cir. 2008); *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) ("[W]e note that a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds. Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate ….") (citation omitted); *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal."). Facts adduced in discovery may cast the qualified immunity issue in a different light, and Defendants are entitled to reassert their qualified immunity defense on summary judgment.

### 2. Privacy in Medical Records

The complaint further alleges Davis, Childs, and Bean violated her substantive due process rights by reviewing her medical records and disclosing them among themselves and possibly others at DCFS. The constitutional "interest in avoiding disclosure of personal matters," *Whalen v. Rose*, 429 U.S. 589, 599 (1977), "includes a 'qualified' constitutional right to the confidentiality of medical records and communications," *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 566 (7th Cir. 2009). Applying this principle, the Seventh Circuit has held that ANCRA's sufficiently weighty interest permits the compulsory disclosure of a psychologist's privileged communications with a child patient. *See Pesce v. J. Sterling Morton High Sch., Dist. 201*, 830 F.2d 789, 791-92, 797-98 (7th Cir. 1987). Although the actions that Davis, Childs, and Bean ultimately took against Sebesta might have violated substantive due process, their limited and confidential use of Sebesta's medical records in discharging their duties did not. *See Summe v. Kenton Cnty. Clerk's Office*, 604 F.3d 257, 270 (6th Cir. 2010) (holding that the county's release of the plaintiff's "medical records" to a citizen, who then

disseminated those records to the public, did not violate substantive due process); *Zembiec v. County of Monroe*, 766 F. Supp. 2d 484, 496-97 (W.D.N.Y. 2011) (holding that "defendant's insistence that plaintiff disclose his medical information to a non-physician" did not violate substantive due process); *In re August, 1993 Regular Grand Jury (Hospital Subpoena)*, 854 F. Supp. 1380, 1389 (N.D. Ill. 1994).

## II.     Counts II-III: State Law Claims

Counts II and III of the complaint allege state law claims for invasion of privacy and intentional infliction of emotional distress against Davis only. Doc. 1 at ¶¶ 22-29. Davis argues that these claims may proceed only in the Illinois Court of Claims and also that ANCRA entitles her to immunity for acting in good faith. As noted in Section I.A, *supra*, these immunity arguments are potentially applicable to Sebesta's state law claims. The arguments, however, fail on the merits, at least at the pleading stage.

Immunity under § 8(d) does not apply if the defendant "acted in … excess of [her] authority." *Healy*, 549 N.E.2d 1240, 1247 (Ill. 1990); *see also Welch v. Ill. Sup. Ct.*, 752 N.E.2d 1187, 1193 (Ill. App. 2011). And ANCRA required Davis to report Sebesta only if she had "reasonable cause to believe a child known to [her] … may be an abused child or a neglected child." 325 ILCS 5/4. Taking the complaint's allegations as true and drawing all reasonable inferences in Sebesta's favor, Davis did not have reasonable cause to believe that the baby was at risk of abuse, which means that ANCRA did not require Davis to report Sebesta. That deprives Davis of protection under both § 8(d) and ANCRA. Again, as with the qualified immunity defense to the substantive due process claims, Davis may reassert her state law immunity arguments at summary judgment if she so chooses.

9

**Conclusion**

For the foregoing reasons, Davis's, Childs's, and Bean's motions to dismiss are granted in part and denied in part. Count I is dismissed to the extent it alleges that Davis, Childs, and Bean violated substantive due process by disclosing and reviewing her medical and mental health records. Defendants shall answer the surviving portions of Sebesta's complaint by October 10, 2013. The court will give Sebesta until October 17, 2013, to file an amended complaint that seeks to replead the dismissed portion of her substantive due process claim. Finally, if Sebesta wishes to proceed against UIMC, she must properly effect service by October 16, 2013; failure to do so will result in the dismissal without prejudice of Sebesta's claims against that defendant. *See* Fed. R. Civ. P. 4(m).

September 26, 2013

_____
United States District Judge